# United States District Court
# Central District of California

| | |
|---|---|
| RODNEY HERACHIO DIXON,<br><br>              Plaintiff,<br><br>    v.<br><br>NPG MUSIC PUBLISHING, LLC; NPG<br>RECORDS, INC.; COMERICA BANK<br>AND TRUST N.A.; and DOES 1–10,<br><br>              Defendants. | Case № 5:17-cv-00363-ODW (DTB)<br><br>**ORDER GRANTING MOTION TO DISMISS [30] AND MOTION TO DEEM PLAINTIFF A VEXATIOUS LITIGANT [39]** |

///
///
///
///
///
///
///
///
///
///

# I.   INTRODUCTION

This is one in a series of actions brought by pro se Plaintiff Rodney Herachio Dixon against Prince Rogers Nelson ("Prince"), entities related to Prince, and successors-in-interest to Prince, claiming that he authored all of Prince's songs and is owed a billion or more dollars under a licensing agreement.  Before the Court are Defendants NPG Music Publishing, LLC ("NPG Publishing"), NPG Records Inc. ("NPG Records"), and Comerica Bank and Trust's ("Comerica") (collectively "Defendants") motions to dismiss and to deem Plaintiff a vexatious litigant.  (ECF Nos. 30, 39.)  For the following reasons, the Court **GRANTS** both motions.

# II.   FACTUAL BACKGROUND

Plaintiff is a self-described songwriter and "producer of musical compositions." (First Am. Compl. ("FAC") ¶ 1, ECF No. 26.)  According to Plaintiff, he authored or jointly authored all or substantially all of Prince's songs, including songs on Prince's popular Purple Rain, Around the World in Day, Sign O' The Times, and Emancipation albums.  (*Id.* ¶¶ 9, 13, 65.)  Plaintiff alleges that he initially gave Prince a license to his works "for three (3) years beginning in the year 1982" in exchange for one million dollars at a later date.  (*Id.* ¶ 33.)  He then extended that license for nine years in exchange for one billion dollars payable in 1994.  (*Id.*)  In 1995, Plaintiff claims that he extended the license for the remainder of Prince's life, receiving one dollar as consideration for the extension from Prince's lawyer Jerry Edelstein.  (*Id.*) The license terminated upon Prince's death on April 21, 2016.  (*Id.*)  This license prohibited "anyone other than Prince from usage" of Plaintiff's songs.  (*Id.* ¶ 76.)

On April 4, 2014, Prince transferred the publishing rights to all or substantially all of his songs (965 songs) to NPG Publishing, of which he was the member-manager.  (*Id.*, Ex. I.)  This transfer of rights was recorded with the United States Copyright Office on February 4, 2016.  (*Id.*)  Since NPG Publishing took "possession" of the songs, Defendants have allegedly exploited Plaintiff's songs by copying them,

distributing them, and selling them "to consumers around the world" without Plaintiff's permission. (*Id.* ¶ 61.)

Over the past twenty-three years, Plaintiff has filed a number of actions seeking to recover the billion dollars he is allegedly owed under the licensing agreement. Plaintiff filed the first such action in California Superior Court for the County of Los Angeles on September 23, 1994, against Warner Brothers Records and Prince. (Tavernier Decl., Ex. G, ECF No. 30-2.)[1] He alleged two causes of action in the complaint: (1) fraudulent transfer, and (2) conspiracy. (*Id.* ¶¶ 1–16.) The complaint was largely nonsensical, referring to Plaintiff as the Messiah, discussing the twenty-eight signers of the Declaration of Independence, and mentioning an "educational system" known as "The Game." (*See e.g.*, *id.* at 266, 268–269.) On February 6, 1995, the court dismissed Warner Brothers Records after its successful demurrer and Plaintiff's subsequent failure to amend the complaint. (*Id.*, Ex. I.) The case could not proceed against Prince because he had not been properly served. (*See id.*, Ex. H at 275.)

On March 24, 1995, Plaintiff filed a nearly identical action against Prince in California Superior Court for the County of San Bernardino. (*See id.*, Exs. K, L.) However, Plaintiff again failed to properly serve Prince. (*Id.*, Ex. K.) Accordingly, the case was dismissed without prejudice on November 29, 1995. (*Id.*)

On April 26, 2016, Plaintiff filed a petition in Carver County District Court (a Minnesota state court) against Prince's estate asserting ownership of "all" of Prince's songs and seeking the one billion dollars owed under the licensing agreement.[2] (*Id.*,

---

[1] Defendants have filed two requests for judicial notice asking the Court to take into account various state court decisions and briefs filed in connection with those decisions. (ECF Nos. 31, 40.) Plaintiff has not opposed Defendants' requests. As Defendants' requests concern documents not subject to reasonable dispute that are directly relevant to the pending motions, the Court grants Defendants' requests. *Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011) (taking judicial notice of state court orders and briefing filed in connection with state court proceedings).

[2] Plaintiff filed a second petition in the Minnesota action titled "Petition Restraining Special Administrator Bremer Trust from Selling Assets of the Estate." (Tavernier Decl., Ex. 21, ECF 39-

Ex. A at 7, 12.)  Shortly thereafter, The Bremer Trust[3] filed a motion to dismiss Plaintiff's petition.  (Tavernier Decl., Ex. 16, ECF No. 39-2.)  The Carver County court found that Plaintiff "failed to establish that he ever had a [licensing agreement] with [Prince]."  (Tavernier Decl., Ex. D at 251, ECF No. 30-2.)  Specifically, the court found that there were no allegations to corroborate the existence of such a licensing agreement or to suggest that there had been adequate consideration for the agreement.  (*Id.*)  Plaintiff subsequently appealed the court's decision.  (Order, ECF No. 35).  On April 19, 2017, the Minnesota Court of Appeals affirmed the Carver County court's decision finding that Plaintiff failed to "sufficiently allege an implied-in-fact contract claim."  (*Id.*)

Around the same time, on January 19, 2017, Plaintiff attempted to revive the long dormant 1994 Superior Court proceeding against Prince by substituting in The Bremer Trust.  (Tavernier Decl., Ex. H at 275, ECF No. 30-2.)  However, the court granted The Bremer Trust's motion to dismiss for failure to prosecute, finding that Plaintiff had not timely served Prince with the complaint.  (*Id.* at 275–276.)  A February 7, 2017 order dismissed the action in its entirety.  (*Id.*)  Plaintiff subsequently appealed that order.  (*See* Vexatious Lit. Mot. at 13 n.3, ECF No. 39-1.)

Plaintiff filed this action on February 24, 2017.  (ECF No. 1.)  On April 5, 2017, Plaintiff filed a first amended complaint alleging: (1) copyright infringement; (2) breach of contract; and (3) intentional interference with contractual relations.  (FAC ¶¶ 64–87.)  On April 19, 2017, Defendants filed the pending motion to dismiss.  (ECF No. 30.)  On April 27, 2017, Defendants filed the pending motion to deem

---

2.)  However, this second petition was clearly not meant to take the place of the operative petition in that action.
[3] The Bremer Trust acted as the Special Administrator for Prince's estate after his death.  (*See* Tavernier Decl., Ex. D at 249, ECF No. 30-2.)  Defendant Comerica has since assumed those responsibilities as Personal Representative of the Estate.  (Tavernier Decl. ¶ 2, ECF No. 30-2.)

Plaintiff a vexatious litigant. (ECF No. 39.) Both motions are now fully briefed and ready for decision. (ECF Nos. 36, 42, 44, 45.)[4]

### III.    LEGAL STANDARD

A court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a motion to dismiss, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks omitted). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Generally, a court should freely give leave to amend a complaint that has been dismissed, even if not requested by the party. *See* Fed. R. Civ. P. 15(a); *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc). However, a court may deny leave to amend when it "determines that the allegation of other facts consistent with

---

[4] The Court held a June 5, 2017 hearing on the motions.

the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV. DISCUSSION

### A. Motion to Dismiss

#### 1. Copyright Infringement

"A plaintiff may not bring an action for infringement unless *he* . . . has . . . registered the [relevant] work with the U.S. Copyright Office." *Jim Marshall Photography, LLC v. John Varvatos of Cal.*, No. C-11-06702 DMR, 2013 WL 3339048, at *5 (N.D. Cal. June 28, 2013) (citing 17 U.S.C. § 411(a)) (emphasis added); *see also Exist, Inc. v. Shoreline Wear, Inc.*, No. LACV1408358JAKRZX, 2015 WL 12781409, at *3 (C.D. Cal. Mar. 17, 2015) (citing *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 158 (2010)). In other words, registration is a "precondition to suit" for copyright infringement. *Epikhin v. Game Insight N. Am.*, 145 F. Supp. 3d 896, 902 (N.D. Cal. 2015) (citing *Reed Elsevier*, 559 U.S. at 166).

Defendants argue that Plaintiff has not established registration of the relevant works. (Mot. 13–14, ECF No. 30-1.) In an attempt to establish the requisite registration, Plaintiff has attached several documents from the United States Copyright Office to his complaint. One of these documents is a registration for "Rameses XII; Merc [S]upertext; a handy manual for the serious student of spirituality" by Rameses America Mercury. (FAC, Ex. K.) However, this registration does not reference any of the works at issue in this action. *See Kema, Inc. v. Koperwhats*, No. C09-1587MMC, 2010 WL 726640, at *3 (N.D. Cal. Mar. 1, 2010) (registration must pertain to the work(s) in question).

The other Copyright Office documents Plaintiff has attached to the complaint relate to the February 4, 2016 recordation of an April 4, 2014 transfer of rights for the relevant works from Prince to NPG Publishing. (*See* FAC, Exs. H, I.) Plaintiff alleges that this recordation somehow caused all 965 of the transferred works to become "part of [the] Merc Supertext" referenced in the previous paragraph. (*Id.*

¶¶ 32, 60.)    However, this notion is *entirely* unsupported by the documents themselves. The recordation documents make no reference to Plaintiff, Plaintiff's alias, or the Merc Supertext.   (*Id.*, Ex. H at 62, Ex. I at 65–67.)   Likewise, the "Exclusive Songwriter Agreement" underlying these Copyright Office recordation documents makes no reference to Plaintiff, Plaintiff's alias, or the Merc Supertext. (*Id.*, Ex. I at 68–73.)

Outside of these documents and related allegations, the complaint does not otherwise allege any registration of the works at issue in this action—let alone any of the specifics of their registration. *See Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*, 606 F.3d 612, 621 (9th Cir. 2010) (allowing an infringement case to move forward where the plaintiff alleged that the Copyright Office received its application for the relevant copyright *and* provided the date on which the application was received). Therefore, the Court finds that Plaintiff has not met the registration prerequisite for filing an infringement claim and **GRANTS** Defendants' motion to dismiss as to Plaintiff's first cause of action.  As there is no indication that Plaintiff can remedy this deficiency, the dismissal is without leave to amend.

**2. Breach of Contract and Intentional Interference with Contractual Relations**

Defendants argue that Plaintiff's breach of contract claim and intentional inference with contract claims are precluded by the doctrine of res judicata based on the Minnesota court's August 29, 2016 decision. (Mot. 11–13.)  "Res judicata, or claim preclusion, bars relitigation of claims in a subsequent action between the same parties or their privies if a final judgment has been entered on the merits." *Herrera v. Cnty. of L.A.*, No. CV097359PSGCWX, 2013 WL 12122287, at *2 (C.D. Cal. Apr. 15, 2013) (citing *In re Schimmels*, 127 F.3d 875, 881 (9th Cir. 1997)).  When, as here, a party requests that a federal court give preclusive effect to a state court decision, the federal court must look to the law of the state that rendered the decision to determine whether res judicata applies. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S.

75, 81 (1984) ("It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."). Although typically raised as an affirmative defense, res judicata may be "addressed at the motion to dismiss stage of litigation, and in so doing, the court can take judicial notice of the earlier proceedings that give rise to the defense." *Torn Ranch, Inc. v. Sunrise Commodities, Inc.*, No. C 09-02674 MHP, 2009 WL 2834787, at *3 (N.D. Cal. Sept. 3, 2009).

Defendants request that the Court give preclusive effect to the Minnesota court's decision. Therefore, the Court must apply Minnesota law in evaluating whether Plaintiff's claims are barred by res judicata. *See Migra*, 465 U.S. at 80. In Minnesota, res judicata bars subsequent claims "when (1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; [and] (4) the estopped party had a full and fair opportunity to litigate the matter." *Hauschildt v. Beckingham*, 686 N.W.2d 829, 840 (Minn. 2004).

Defendants argue that the Minnesota decision/action satisfies the four elements necessary to invoke res judicata. (Mot. 12–13.) Defendants first assert that Plaintiff's petition in the Minnesota action sought recovery based on the same licensing agreement or agreements that Plaintiff now seeks to recover on in the current action. (*Id.* at 12.) Defendants next assert that the Minnesota action was commenced against the same parties or parties in privity—Comerica has assumed the position of The Bremer Trust and NPG Music and NPG Records are, as they were then, wholly-owned and operated by the estate's representative. (*Id.*; FAC ¶ 83 (noting that Defendants act as the sole members of NPG Publishing and NPG Records); Tavernier Decl. ¶ 3, ECF No. 30-2.) Defendants also assert that the Minnesota decision was final and on the merits.[5] (Mot. 12.) Lastly, Defendants assert that Plaintiff had a full

---

[5] There is no indication that Plaintiff has successfully docketed an appeal with the Minnesota Supreme Court.

and fair opportunity in the Minnesota action to litigate this matter, filing "four declarations, two petitions, various objections and legal memoranda, and hundreds of pages of documentation." (*Id.* at 13.)

Plaintiff's sole argument in opposition is that the Minnesota court considered only the 1982 licensing agreement, which was not supported by adequate consideration and not the 1995 agreement, which was supported by adequate consideration in rendering its decision. (*See* Opp'n 15–16, 42, ECF No. 36.) Plaintiff misreads the Minnesota court's decision.

Rather than viewing each successive licensing agreement as separate, the Minnesota court appears to have analyzed the successive agreements together as part of a larger agreement that was "consummated" in 1995. (Tavernier Decl., Ex. D at 250–252, ECF No. 30-2.) That the Minnesota court addressed the successive agreements together does not mean that it failed to adequately consider the 1995 agreement or aspect of the agreement. The Minnesota court explicitly referenced the 1995 consummation of the agreement in its decision and considered Plaintiff's petition and supporting documents that discuss the 1995 agreement in reaching its decision. (*See id.* at 249 (listing the documents on which the Minnesota court relied); *see also* Tavernier Decl., Ex. A ¶ 24; Tavernier Decl. Ex. 17 ¶ 7, ECF No. 39-2; Tavernier Decl. Ex. 20 at 20, ECF No. 39-2.) Further, the critical language of the decision does not limit the court's holding to a specific agreement: "[Plaintiff] fails . . . to establish that he *ever* had a valid contract with [Prince]." (Tavernier Decl., Ex. D at 251, ECF No. 30-2.)

The Court also notes that the portion of Plaintiff's argument relating to consideration is misleading. Plaintiff's Minnesota petition does not appear to have contained the allegation about receiving consideration from Jerry Edelstein that the present pleadings now contain. Therefore, the Minnesota court was correct in stating that the agreement or agreements (depending on how one views them) were not supported by adequate consideration. (*See* Tavernier Decl. Ex. D at 251.) Finding

that the four elements of res judicata are met for the reasons described by Defendants, and finding Plaintiff's argument unavailing, the Court holds that Plaintiff's breach of contract claim is barred by the doctrine of res judicata.[6]

The Court also finds that Plaintiff's intentional interference with contract claim is barred by the doctrine of res judicata. Although Plaintiff did not seek to recover from the estate on this basis during the Minnesota action, Plaintiff *could have* done so: the estate owns the entities accused of interference, Minnesota courts hearing probate matters have general jurisdiction to hear claims related to estates, and Minnesota recognizes an analogous cause of action. (FAC ¶ 83 (noting that the estate's personal representative acts as the sole member of NPG Publishing and NPG Records); Tavernier Decl. ¶ 3, ECF No. 30-2; *see also In re RIJ Revocable Trust Agreement Dated Mar. 16, 2006*, No. A13-1305, 2014 WL 684698, at *5 (Minn. Ct. App. Feb. 24, 2014) (explaining that probate courts in Minnesota were consolidated with district courts and as a result have general jurisdiction over matters involving estates); Minn. Stat. Ann. § 524.1-302 (noting that probate courts have jurisdiction "over all subject matter relating to estates"); *Sysdyne Corp. v. Rousslang*, 860 N.W.2d 347, 351 (Minn. 2015) (recognizing tortious interference with contract as a cause of action and outlining the elements). When a claim could have been brought in the previous proceeding, it is subject to the doctrine of res judicata. *Laase v. Cty. of Isanti*, 638 F.3d 853, 856 (8th Cir. 2011). Therefore, the Court also holds that Plaintiff's

---

[6] The fact that the Minnesota action was a probate proceeding based on a petition without formal causes of action and not a traditional civil proceeding based on a complaint with formal causes of action makes no difference for purposes of res judicata. *See Hauschildt*, 686 N.W.2d at 840 (noting that res judicata does not turn on the way that the plaintiff chooses to title or frame his causes of action but rather on whether the plaintiff previously sought recovery based on the same underlying nucleus of facts); *see also Bengtson v. Setterberg*, 227 Minn. 337, 347–48, 35 N.W.2d 623, 628 (1949) (noting that probate proceedings may have res judicata effect); *In re Pearson*, No. C5-99-1397, 2000 WL 519246, at *1 (Minn. Ct. App. May 2, 2000) ("The district court's decision in a probate case is res judicata and binding unless reversed or modified on appeal or in a direct proceeding.").

intentional interference with contractual relations claim is barred by the doctrine of res judicata.

The Court notes in closing that this case presents a textbook example of why the doctrine of res judicata is necessary. The doctrine of res judicata was created to "protect [parties] from the expense and vexation attending multiple lawsuits, to conserve judicial resources, and to foster reliance on judicial action by minimizing the possibility of inconsistent decisions." *Americana Fabrics, Inc. v. L & L Textiles, Inc.*, 754 F.2d 1524, 1529 (9th Cir. 1985). Plaintiff has maintained cases against Prince, entities related to Prince, and Prince's successors-in-interest for nearly a quarter of a century based on essentially the same claims without ever getting past the motion to dismiss stage, in the process wasting hundreds of hours of court time and causing opponents to incur significant expense in preparing responses to meritless, and at times nonsensical, pleadings and briefs. Plaintiff will not be allowed to avoid the consequences of his previous actions in this proceeding—the Court **GRANTS** Defendants' motion to dismiss as to Plaintiff's second and third causes of action without leave to amend.

**B. Motion to Deem Plaintiff a Vexatious Litigant**

In bringing their vexatious litigant motion, "Defendants seek an order that, absent prior leave of the presiding judge of the Central District of California, Mr. Dixon shall be prohibited from filing any new actions relating to the same set of facts or legal claims as the present action against any of the following parties: Comerica Bank and Trust, N.A. as Personal Representative for the Estate of Prince Rogers Nelson, NPG Music Publishing, LLC, NPG Records, Inc., and any other entity controlled by the Personal Representative." (Not. of Vexatious Lit. Mot. 2, ECF No. 39.)

"Federal courts can 'regulate the activities of abusive litigants by imposing carefully tailored restrictions under . . . appropriate circumstances.'" *Ringgold-Lockhart v. Cnty. of L.A.*, 761 F.3d 1057, 1061 (9th Cir. 2014) (quoting *De Long v.*

*Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990)); *see also* C.D. Cal. Local Rule 83-8 (governing vexatious litigants). When district courts seek to impose pre-filing restrictions, they must: (1) give litigants notice and "an opportunity to oppose the order before it [is] entered"; (2) compile an adequate record for appellate review, including "a listing of all the cases and motions that led the district court to conclude that a vexatious litigant order was needed"; (3) make substantive findings of frivolousness or harassment; and (4) tailor the order narrowly so as "to closely fit the specific vice encountered." *Ringgold-Lockhart*, 761 F.3d at 1062 (quoting *De Long*, 912 F.2d at 1148). The Court considers each factor in turn.

## 1. Notice and an Opportunity To Be Heard

Defendants filed a noticed motion to deem Plaintiff a vexatious litigant on April 27, 2017, approximately six weeks before the scheduled hearing on the motion. (*See* ECF No. 39.) Plaintiff filed a timely fifty-page opposition to that motion which the Court has duly considered. (ECF No. 42.) The Court held a hearing on the motion on June 5, 2017. Therefore, Plaintiff has had adequate notice and an opportunity to be heard. *See Ringgold-Lockhart*, 761 F.3d at 1063 (finding the notice and opportunity to be heard element satisfied where Plaintiff had an opportunity to file an opposition and the court held a hearing on the motion).

## 2. Adequate Record for Review and Substantive Frivolous Findings

In their motion to deem Plaintiff a vexatious litigant, Defendants provided a detailed record of Plaintiff's filings in the 1994 Superior Court action, the 1995 Superior Court action, and the 2016 Carver County District Court action. (Vexatious Lit. Mot. 2–7, ECF No. 39.) In doing so, Defendants have clearly described the bizarre statements contained in Plaintiff's submissions, the voluminous nature of those submissions, and the repetitive quality of the successive proceedings. (*Id.*) The Court finds Defendants' procedural history to be highly accurate and well organized. (*Id.*) However, due to its length, the Court must resort to a summary of that procedural history here.

### a. Plaintiff's Bizarre Statements

A court may consider the content of a party's submissions in making a vexatious litigant determination. *See De Long*, 912 F.2d at 1148 (noting the "content" of a party's filing may serve as "indicia" of vexatiousness). As Defendants point out, Plaintiff's submissions have at times left behind reality in addition to sound legal theory. For instance, the complaint in the 1994 action includes the following statements: (1) "Rameses America Mercury became the first person in America to be subject to The Higher Authority," (2) "on July 13, 1994 . . . [Prince] became subject to the Messiah, and sealed thereof of the First Amendment, The Emancipation Proclamation, The Declaration of Independence, The State of California, and The Holy Bible," and (3) "[Plaintiff has a] master plan . . . to teach Prince[], as well as the rest of society a valuable lesson about suppression, submission and faith." (Tavernier Decl., Ex. 2 ¶¶ 3, 11, ECF No. 39-2.) The declarations supporting the complaint and Plaintiff's briefs continue in a similar vein. For instance, one of Plaintiff's declarations indicates that he is "Pharaoh of the World," includes lengthy biblical passages, refers to Judge Aurelio Muñoz as "Scorpio," and explains that Plaintiff is pursuing a parallel petition to "change his name from Rameses America Mercury to Love." (Tavernier Decl., Ex. C (Declaration of Pharaoh Rameses America Mercury, Pharaoh of the World), Introduction, ¶¶ 1, 10, ECF No. 30-2.) In another of his declarations from the 1994 action, Plaintiff refers to himself as a "son of God" and quotes biblical passages without any mention whatsoever of facts pertinent to the case. (Tavernier Decl., Ex. 12 at 95–99, ECF No. 39-2.) Plaintiff also includes other bizarre supporting documentation, such as a fax he sent to Janet Jackson discussing the concept of "Cosmic Hopscotch to Self-realization," Egyptian gods, and his desire for her to participate in a music video for his song "Queen Hottie." (Tavernier Decl., Ex. C at 83–85, ECF No. 30-2.)

Declarations made in the course of the Minnesota action likewise include some "far out" statements, including mentions of Plaintiff's dealings with Saudi Arabian

royalty, his attempt to be legally adopted as a "Son of God and Earth," and his creation of "The Game," which involves a Las Vegas mail order contest, themes of ancient Egypt, and safety deposit boxes that hold "answers." (Tavernier Decl. Ex. 18, at 162, 166, 167, 184, ECF No. 39-2.)

Plaintiff's filings in this action also raise red flags. For instance, Plaintiff seeks an opportunity for evidentiary discovery in part "to dive deeper into his relationship with Prince and their mothers respectively." (Opp'n to Vexatious Lit. Mot. 22, ECF No. 42.) Plaintiff also continues to cite biblical passages. (*Id.* at 25.) Further, Plaintiff attempts to equate or tie in a finding of legal vexatiousness with racism, including statements such as "Impoverished African-American's are not considered 'vexatious' for believing in themselves, or standing up for their rights." (*Id.* at 23.)

After reviewing Plaintiff's submissions, the Court finds much of their content irrelevant, if not deeply troubling. The content of Plaintiff's submissions weighs in favor of deeming Plaintiff a vexatious litigant.

### b. Voluminous Nature of Plaintiff's Submissions

In addition to considering the content of a party's submissions, the Court may also consider the quantity and length of those submissions. *See De Long*, 912 F.2d at 1148 (number of submissions); *Ringgold-Lockhart*, 761 F.3d at 1063 (noting with seeming approval the district court's discussion of page lengths). Plaintiff has filed numerous, lengthy, unsolicited submissions inappropriate for the motion to dismiss stage of proceedings in this and the previous three relevant actions.[7] The following is a partial summary of the submissions that fall within this category.

One week after filing his complaint in the 1994 Superior Court action, Plaintiff submitted what appears to have been an unsolicited declaration. (Tavernier Decl., Ex.

---

[7] Generally, only documents attached to the complaint or referenced therein may be considered in connection with a motion to dismiss. *See Lee*, 250 F.3d at 688 (motion to dismiss review typically limited to complaint); *Hsu v. Puma Biotech., Inc.*, No. SACV150865AGJCGX, 2016 WL 5859000, at *3 (C.D. Cal. Sept. 30, 2016) (discussing instances where review may be expanded beyond complaint).

3, ECF No. 39-2.)   Plaintiff then submitted what appears have been another unsolicited declaration on July 9, 1996, after Judge Aurelio Muñoz granted Warner Brothers Records' demurrer. (*Id.*, Ex. 12.)

Two months after filing his initial petition in the 2016 Minnesota action, Plaintiff filed what appears to have been an unsolicited 179 page case summary. (*Id.*, Ex. 19.)   Approximately, two weeks later, Plaintiff filed what appears to have been unsolicited declaration. (*Id.*, Ex. 20.)   Plaintiff then submitted an unsolicited fifty-three page memorandum after Judge Kevin Eide entered an order dismissing the case. (*Id.*, Ex. 27.)

In this proceeding, Plaintiff grossly exceeded the relevant page limit in both of his opposition briefs (each brief was fifty pages long) and filed an unsolicited fifty-page declaration after briefing was complete. (*See* ECF Nos. 36, 42, 47; *see also* Civil Standing Order.)

These unsolicited and inappropriate declarations, memoranda, and supporting documents have caused this Court, previous courts, and Defendants many hours of unnecessary review.   As such, the voluminous nature of Plaintiff's submissions weighs in favor of deeming Plaintiff a vexatious litigant.

### c.  Repetitive Quality of the Successive Proceedings

As outlined in the res judicata section above, Plaintiff has essentially filed the same action with minor variations on four separate occasions: all actions concerned the same licensing agreement/agreements and sought recovery of a billion or more dollars based on that agreement.  While the Ninth Circuit has strongly implied that the filing of two successive actions would not be sufficient to warrant the imposition of a vexatious litigant designation, it has not opined on whether four successive actions, as here, would be sufficient. *Ringgold-Lockhart*, 761 F.3d at 1065 (noting that it would be "extremely unusual" to make a vexatious litigant finding on the basis of two successive actions).

However, as Defendants point out, another court in this district has found that four successive removals of an unlawful detainer action *were* a sufficient basis for a vexatious litigant finding. *See Schneider v. Roberts*, No. CV 14-1668-UA, 2014 WL 1891416, at *6 (C.D. Cal. May 9, 2014). The Court finds that the four successive actions here are sufficiently repetitive and numerous to serve as the foundation for a vexatious litigant claim.

After reviewing the papers submitted in support of this motion and all relevant evidence, the Court finds that there is an extensive record on which to base a vexatious litigant finding. The Court also finds that the bizarre statements made by Plaintiff and the repetitive quality of the successive actions provide a strong substantive foundation for such a finding.

**3. Narrow Tailoring**

As the Court finds that there is a basis for a vexatious litigant order, it must consider the appropriate breadth of that order. The Ninth Circuit has made clear that any vexatious litigant order must have defined boundaries and be "narrowly tailored to closely fit the specific vice encountered" so as not to deprive the litigant of more generalized access to the judicial system. *De Long*, 912 F.2d at 1148. Defendants request an order with the language "Mr. Dixon shall be prohibited from filing any new actions relating to the same set of facts or legal claims as the present action against any of the following parties: Comerica Bank and Trust, N.A. as Personal Representative for the Estate of Prince Rogers Nelson, NPG Music Publishing, LLC, NPG Records, Inc., and any other entity controlled by the Personal Representative." (Not. of Vexatious Lit. Mot. 2.)

The Court believes the proposed order is too broadly worded. A more appropriate order focuses on the factual specifics: the contract and the intellectual property at issue. *See Azam v. Fed. Deposit Ins. Corp.*, No. CV 15-3930-JLS (ASX), 2016 WL 4150762, at *14 (C.D. Cal. July 19, 2016) (providing an example of a

vexatious litigant order focusing on factual specifics).  Therefore, the Court adopts the amended order below.

> Plaintiff, or any person acting on his behalf, must first obtain written authorization from a magistrate judge before initiating a new action against Comerica Bank and Trust, N.A. as Personal Representative for the Estate of Prince Rogers Nelson; NPG Music Publishing, LLC; NPG Records, Inc.; or any other entity controlled by the Personal Representative that is related to (1) a contract, of any type, to which Prince was a party, or (2) any of the 965 songs included in the April 4, 2014 transfer of rights (the "Exclusive Songwriter Agreement").  Plaintiff will be allowed to file a complaint if a magistrate judge finds that the proposed complaint is not frivolous and not duplicative of any claim Plaintiff has already filed in state or federal court.  If the magistrate judge allows the filing but determines, based on the pleadings and any evidence provided by the parties, that there is no reasonable probability Plaintiff will prevail in the litigation, the magistrate may order Plaintiff to first post security in an appropriate amount to be determined by the magistrate.

**4. Alternative Basis for Vexatious Litigant Finding: State Law Per Local Rule 83-8.4**

As an alternative to the analysis outlined above, Central District of California Local Rule 83-8.4 authorizes district courts to rely on the California state vexatious litigant statute codified in California Civil Procedure section 391 to make a vexatious litigant finding.  *Williams v. Super. Ct. of L.A. Cnty.*, No. CV 13-7759 GW JCG, 2014 WL 9923635, at *5 (C.D. Cal. Dec. 18, 2014), *report and recommendation adopted as modified*, No. CV-13-7759-GW JCGX, 2015 WL 3866032 (C.D. Cal. June 19, 2015) (noting that there are two viable vexatious litigant tests, one based on case law and one based on California Code of Civil Procedural section 391).  California Code of Civil Procedure 391(b)(4) allows for a vexatious litigant finding where a party was previously designated "a vexatious litigant by any state . . . court."  Here, the record clearly indicates that Plaintiff was declared a vexatious litigant by the Minnesota

court.  (Tavernier Decl., Ex. E at 253–255, ECF No. 30-2.)  Thus, the Court would also designate him a vexatious litigant on that basis.[8]

## V.    CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendants' motion to dismiss without leave to amend and **GRANTS** Defendants' motion to deem Plaintiff a vexatious litigant.  (ECF Nos. 30, 39.)

**IT IS SO ORDERED.**

June 6, 2017

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**

---

[8] In reaching its decision to deem Plaintiff a vexatious litigant, the Court considered whether sanctions or other less restrictive methods might be effective in preventing Plaintiff from filing further actions.  The Court finds that these methods would not be effective.  Plaintiff has already been deemed a vexatious litigant in another court, has filed virtually the same case in multiple venues, and has previously filed for bankruptcy.  (*See* Vexatious Lit. Mot. 9.)  Further, the Court sees a thousand dollar fine as being of little import to a plaintiff seeking one billion dollars.